**THOMAS et al. v. STANDARD RICE CO., Inc.**

**No. 2074.**

Court of Appeal of Louisiana. First Circuit.

March 4, 1940.

Rehearing Denied April 10, 1940.

Percy T. Ogden, of Crowley, for appellant.

McCoy, King & Jones, of Lake Charles, for appellee.

LE BLANC, Judge.

This is a suit for damages for an alleged breach of contract covering the sale of a crop of Blue Rose rice, estimated to be from 1,000 to 1,100 sacks, as per sample, at $4.08 per sack. The defendant accepted and paid for 375 sacks but refused to take 629 sacks on the ground that the remaining rice which comprised those 629 sacks did not grade according to sample. The plaintiffs in the suit are the American Rice Growers Co-operative Association, Inc., which will hereafter be referred to as the association, through which the rice crop had been sold, and Nelson Thomas, the rice farmer, member of the association, whose crop it was. The defendant is Standard Rice Company, Inc., a corporation engaged in the rice milling business which operates quite a number of mills, one of them at Crowley, in Acadia Parish in this State.

In their petition the plaintiffs aver that the sale was made on September 18, 1936, in accordance with the established custom and practices of the association, upon competitive bids, at public sale, and by sample, at the price of $4.08 per barrel of 162 lbs. of rough rice; that it included a total of 1,004 sacks of rice which met the grade and quality of the sample on which it had been sold, and that defendant accepted and received, on September 19th and 21st, 1936, 375 sacks for which it paid the contract price. They aver that the 629 sacks which defendant rejected was rice of the same quality and grade as the sample and that defendant's real reason for rejecting it was because there was a general decline in the rice market shortly after the date of sale, and it desired to avoid a loss as a result thereof.

Plaintiffs then allege in detail their manner of putting defendant in default, calling on it to comply with its contract or else the rice would be sold on the open market and it would be held for the difference in the market price at which it would be sold and the contract price. Upon defendant's failure to comply, plaintiffs aver that the rice was sold resulting in a loss to them of 98 cents per barrel, or the sum of $739.21. In addition, they aver, they were put to further expenses in the way of insurance and storage charges amounting to $53.68, which they are entitled to recover from the defendant.

The defense, according to the answer, is centered on the grade and quality of the 629 sacks of rice, defendant insisting that that much of the rice was not of the same grade as the sample and that was the sole reason why it was rejected. Defendant especially denies that it refused to take the rice on account of a decline in the market. It is also claimed in the defendant's answer that 116 of the 629 sacks of rice was not grown by the farmer whose crop it had purchased. As an alternative defense, it is set out that plaintiffs failed to minimize their alleged loss as they had to do, and on the contrary, refused an offer of adjustment of $3.90 per barrel which would have meant a difference of 18 cents

in the contract price, instead of 98 cents, and consequently if they are held to be entitled to any damages whatever, the amount should be restricted accordingly.

The lower court refused to strike out, on motion of counsel for plaintiff, the defendant's plea under its alternative defense and permitted the defendant, subject to objection, to offer proof in support thereof. In passing on the merits of the case however the lower court sustained the objection and proceeded to render judgment in favor of the plaintiffs for the full amount of their demand. Defendant has appealed.

The record contains a voluminous mass of conflicting testimony which involves a controversy over the relative value of two different systems of rice grading; one side supporting the certificate system evolved by the U. S. Department of Agriculture and now used by the American Rice Growers Association, under which rice is sold according to a grading certificate based on scientific grading methods, and the other upholding the cupweight system used by certain buyers representing different rice mills. Interesting as it is, this testimony is relatively of little value in determining the issue that is presented to the court in this case as practically all the witnesses on both sides agree that in the final analysis, it is the result obtained in the mill after the rice has been run through, that discloses its true grade.

We find that the facts relating to the placing of defendant in default, as already outlined, are not seriously disputed and after all, the vital point in the case is whether or not defendant was justified in rejecting the 629 sacks of rice on account of what it claimed was an inferiority in grade with the sample on which the crop had been sold.

From the testimony it appears that Nelson Thomas, the farmer, cultivated a farm of some 200 acres near Roanoke in the Parish of Jefferson Davis. He made the rice crop on all of his property with the exception of approximately 60 acres which was cultivated by tenants and from which he received a percentage of the crop as rent. Incidentally, the 116 sacks of rice which defendant claims was not included in the contract was his portion of the crop from the rented land.

Mr. Thomas, as already stated, was a member of the association and under the agreement between them, the association acted as his agent in the sale of his crop. Under the customary procedure of the association in selling a crop of rice, after Mr. Thomas got ready to thresh his crop, a sample was obtained, the crop was estimated and the mills in the district were notified that the rice would be sold on a certain date. On the day it was offered for sale, September 18, 1936, the defendant was the highest bidder at $4.08, and became the purchaser. The sale was on that date confirmed in writing. There is testimony to the effect that the entire crop was estimated at some 1,400 to 1,500 sacks of rice but on the day of sale, defendant was advised that there would be some red rice in the total amount, which, however, was not to be included in the contract which contemplated only white rice of sample grade. Plaintiffs' witnesses testify that defendant's agent who represented it in the purchase informed Thomas that he wanted the red rice also and that a price for it would be agreed upon later.

On the day of the sale threshing had already been going on and the following day, that is Saturday, September 19, 1936, there were some 450 sacks of rice already threshed and stored in the Farmers Warehouse, when defendant started to haul it to its mill in Crowley. Defendant actually graded 411 sacks that day and during Saturday and the following Monday, hauled 375 sacks for which it paid the contract price. The next day it rejected the remainder of the crop most of which had not yet been harvested claiming that it did not grade according to the sample on which it had been sold. Afterwards, according to the defendant, efforts at an adjustment in prices were made, but without avail. It might here be stated that during this time, there was a steady decline in the rice market and that is what gave rise to plaintiffs' contention that the rice was rejected by defendant in order to avoid the loss which faced it. It strikes us as being a bit strange that the rice started to get off grade so abruptly as defendant claims. All of the rice covered by the contract of sale seems to have been cultivated and harvested in the same manner and under the same weather conditions. Moreover, the fact that a good bit of the rejected part of the crop was not yet harvested on September 21st or 22nd, 1936, when defendant notified plaintiffs of its refusal to take the remainder, militates

strongly, we think, against the defendant's contention that it was not up to grade. Another matter which remains without explanation on the part of the defendant is its refusal or failure to take the 36 sacks of rice in the total number of sacks which it had graded and accepted, and which admittedly came up to sample.

The strongest proof in plaintiffs' favor, that the rejected rice was substantially of the same grade and quality as the sample, comes not from the testimony of the witnesses but from the actual mill run after it had been milled and which, as conceded by all the witnesses, is, after all, the true test.

The 375 sacks of rough rice, which defendant accepted and milled in its own mill, yielded 93.19 lbs. of head rice per sack. It is the head rice, which we understand, establishes the true value of the rice. The 629 sacks of rejected rice were milled by The American Rice Milling Company which had purchased it, in its mill at Crowley and the turn out there was 91.77 lbs. of head rice per sack. The slight variance of 1.42 lbs. per sack, it is shown, can be readily accounted for by the difference in machinery, the milling methods and the efficiency of the millers, in the two mills. Besides the small discrepancy in yield, the rice, after it had been milled, was classified the same by each of the respective mills.

We are unable to agree with defendant's contention that the 116 sacks of rice which Thomas, the farmer, received as rental from his tenants, were not to be included in the contract under which it purchased his rice crop. There was nothing in the agreement under which the crop was bought which would indicate that the sale was to be limited to that part of his crop which had been grown by himself. The only exception, as we view it, would be with regard to whatever red rice would show up in his crop. The sale contemplated all of his rice crop which might be classified as No. One Blue Rose, according to sample, which came from off his property, regardless of whether he had grown it himself or received it in rental from his tenants.

After a careful consideration of the entire record, we are unable to find manifest error in the conclusions reached by the district judge "that the 629 sacks of rice in controversy met the grade and quality of the original sample and that the whole was covered by the contract." The judgment below correctly awarded the plaintiffs their demands and it is accordingly affirmed at the costs of the appellant.